FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 02, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BREWSTER LOOMER and PETER SLIMAN, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>    v.<br><br>VAAGEN BROS LUMBER, INC, a Washington corporation,<br><br>                        Defendant. | NO. 2:24-CV-0206-TOR<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

BEFORE THE COURT is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 22). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 22) is **GRANTED**.

## BACKGROUND

Plaintiffs, on behalf of themselves and all Class Action Members, brought

this action on June 17, 2024, and a First Amended Complaint ("FAC") on August

29, 2024, against Defendant making class action allegations of violations for

failure to pay wages pursuant to the Washington Minimum Wage Act

("WMWA"), RCW § 49.46 *et seq.*, failure to pay overtime wages pursuant to

RCW § 49.46.130, failure to compensate for missed meal breaks pursuant to RCW

§ 49.12.020, rest break violations pursuant to RCW § 49.12.020, failure to pay

unpaid wages on termination pursuant to RCW § 49.48.010, and willful refusal to

pay wages pursuant to RCW § 49.52.050.  ECF No. 12 at 15-21.  Defendant

answered the Complaint on September 17, 2024.

      The parties engaged in private mediation on May 13, 2025 and filed a Notice

of Settlement on June 24, 2025.  ECF Nos. 20, 22-1 at ¶ 11.  The terms of the

settlement agreement are memorialized in the Class Action Settlement Agreement

(the "Settlement Agreement").  ECF No. 22-1 at 11-15.  The parties now move for

the Court to (1) grant preliminary class certification of the class; (2) grant

preliminary approval of the Settlement Agreement; (3) approve the proposed

notice plan and class notice forms; (4) appoint CAC Services Group, LLC

("CAC") to serve as the Settlement Administrator; and (5) schedule the final

fairness hearing and related deadlines.  ECF No. 22 at 2.

## DISCUSSION

      A proposed class action settlement must be fair, reasonable, and adequate.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT ~ 2

Fed. R. Civ. P. 23(e)(2).  Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.  When, as here, the parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In assessing the propriety of the class certification, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" as unlike fully litigated class actions, "a court asked to certify a settlement class will lack the opportunity . . . to adjust the class" as the proceedings unfold.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Once the Court temporarily certifies the class and preliminarily approves the settlement, notice may be given to the class and a fairness hearing may be scheduled.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008).

## I. Certification of the Class

A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and satisfies one of the three subdivisions of Rule 23(b).

The prerequisites under Rule 23(a) are as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 3

(1) the class is so numerous that joinder of all members is impracticable ["numerosity"];

(2) there are questions of law or fact common to the class ["commonality"];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

Fed. R. Civ. P. 23(a).

Additionally, the parties must meet one of the three subdivisions of Rule 23(b). The parties seek qualification as a Rule 23(b)(3) class. Rule 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A. Rule 23(a)

### i.   Numerosity

The proposed class consists of approximately 510 employees. The Court finds that joinder of potentially 510 separate plaintiffs in this matter is impracticable and renders numerosity preliminarily met.

### ii.   Commonality

Commonality is met through the existence of a "common contention" that is

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 4

of "such a nature that it is capable of classwide resolution." *Wal-Mart Store, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A contention is capable of classwide resolution if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

The Court finds Plaintiffs' proposed class satisfies the commonality requirement.  Plaintiffs contend in their FAC that "common questions of law and fact exist as to whether the employment policies and practices formulated by Defendant and applied to Class members constitute violations of Washington law." ECF No. 12 at 7.  The FAC then lays out twenty common questions of law and fact.  *Id.*  In the pending motion, Plaintiffs assert the commonality prerequisite is met because "the common questions of whether Defendant's uniform wage practices for all Class members predominate over any individual issues, with a class action the superior, and likely only, method to adjudicate these claims."  ECF No. 22 at 6.  Because it appears the same alleged conduct and questions of law would form the basis of each of a class member's individual claims, the commonality prerequisite has been met.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 5

### iii.    Typicality

Typicality requires that the representative parties have claims "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test " 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation omitted).

Here, Plaintiffs state their claims are typical of those of the proposed class members as they "were subject to the same policies and practices of Defendant, which resulted in losses to Plaintiffs and the Class." ECF No. 12 at 9. Like Plaintiffs, the proposed class consists of individuals who were employed by Defendant in Washington and allegedly suffered from the same employment policies and practices in violation of Washington's laws as Plaintiffs. The Court finds that Plaintiffs' claims are reasonably co-extensive with those of the putative class, and that typicality is therefore satisfied.

### iv.    Adequacy of Representation

The final Rule 23(a) prerequisite is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class

1  members and (b) will the named plaintiffs and their counsel prosecute the action

2  vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

3  454, 462 (9th Cir. 2000).

4      Plaintiffs assert that they "nor Plaintiff's counsel have interests that are

5  contrary to or that conflict with the class."  ECF No. 12 at ¶ 5.8.  There is no

6  indication at this stage of any conflicts between the class representatives' interests

7  and those of the proposed class members.  Additionally, Plaintiffs' counsel has

8  extensive experience in complex civil and commercial litigation including wage

9  and hour class actions, as reflected in declarations submitted with Plaintiffs'

10  motion for preliminary approval of class action settlement.  ECF Nos. 22-1 at 6-8,

11  22-2.  Finally, Plaintiffs have been involved in the litigation process, further

12  supporting adequacy in the representation.  *See* ECF No. 22-1 at ¶ 7.  The Court

13  finds adequacy of representation has been satisfied.

14  **B. Rule 23(b)(3) Requirements**

15      The parties here seek certification under Rule 23(b)(3) which requires: (1)

16  "that the questions of law or fact common to class members predominate over any

17  questions affecting only individual members"; and (2) "that a class action is

18  superior to other available methods for fairly and efficiently adjudicating the

19  controversy."  Fed. R. Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more

20

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT ~ 7

1    demanding," than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*,

2    617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, at 623-24).

3         **i.    Predominance**

4         Predominance is essentially "an assessment of 'whether proposed classes are

5    sufficiently cohesive to warrant adjudication by representation.' "  *Torres v.*

6    *Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Vinole v.*

7    *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)).  While this

8    requirement is similar to the commonality requirement of Rule 23(a)(2), the

9    standard is much higher under Rule 23(b)(3) and requires convincing proof that

10   common questions "predominate."  *Amchem*, 521 U.S. at 623-24.

11        Plaintiffs contend in the FAC that "Defendant engaged in a common course

12   of wage and hour abuse toward Plaintiffs and members of the Class.  The common

13   issues arising from this conduct that affect Plaintiffs and members of the Class

14   predominate over any individual issue."  ECF No. 12 at ¶ 5.9.  Plaintiffs then

15   describes several common courses of conduct Defendant engaged that affected

16   both Plaintiffs and the members of the proposed class including failure to pay for

17   all hours of work, failure to pay overtime wages, failure to provide meal breaks,

18   failure to provide rest breaks, and failure to maintain and provide accurate wage

19   statements.  *Id.* at ¶¶ 6.1-6.36.  Class actions in which a defendant's practices are

20   challenged generally satisfy the predominance requirement of Rule

23(b)(3). *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *5-6 (E.D. Cal. July 6, 2015). The Court finds the predominance factor has therefore been met in this case.

### ii. Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d, 1011, 1023 (9th Cir. 1998) (citation omitted), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As the proposed class consists of 510 members, individual resolution of each class member's dispute would require an exorbitantly high number of separate lawsuits. There does not appear to be any other individual actions pending, or any other impediments to managing the proposed class. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Certification of the class and the Settlement Agreement eliminates the risk of duplicative lawsuits and ensures each class member's claims are resolved in an efficient and cost-effective manner. Thus, the Court finds the superiority requires is satisfied. Therefore, the Court temporarily certifies the proposed class for purposes of approving this Settlement only.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 9

## II.  Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires the district court to approve any settlement of a certified class before such a settlement becomes final.  Fed. R. Civ. P. 23(e).  Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.  The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement.  Manual for Complex Litigation § 21.632 (4th ed. 2004).  The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing."  William B. Rubenstein et al., Newberg on Class Actions § 13:10 (5th ed. 2013).

In granting preliminary approval, the Court considers "whether the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations; has no obvious deficiencies; does not grant preferential treatment to class representatives, and falls within the range of possible approval."

Upon review, the Court finds that the Settlement Agreement is the result of serious, informed, and non-collusive negotiations. The Settlement Agreement is the result of arm's length negotiations by counsel well-versed in the prosecution of

1   class actions.  The assistance of a professional mediator reinforces that the

2   Settlement Agreement is non-collusive.

3          The monetary component of the Settlement Agreement provides for a Gross

4   Settlement Amount ("GSA") of $1.6 million that includes payments for settlement

5   administration expenses of up to $6,600, a service award to Plaintiffs up to

6   $10,000, each, attorneys' fees up to one third of the settlement amount ($533,280),

7   and reimbursement litigation costs of up to $17,500.  ECF No. 22 at 2.  The

8   remaining amount shall be considered the Class Fund and be distributed directly to

9   participating class members.  *Id.* at 5.

10         No class member or group of Class members will receive unduly favorable

11  treatment under the terms of the Settlement Agreement.  Class member payments

12  will be calculated and divided among all participating class members on a pro rata

13  basis.  Non-participating class members will not receive any individual class

14  payments.  Counsel will retain amounts equal to their individual class payments for

15  redistribution to participating class members on a pro rata basis.  ECF No. 22-1 at

16  15.  The Court preliminarily finds this fair and reasonable under the circumstances.

17         The Court also preliminarily concludes that the amount for the class

18  representative's incentive award is reasonable.  "Incentive awards that are intended

19  to compensate class representatives for work undertaken on behalf of a class are

20  fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litigation*,

779 F.3d 934, 943 (9th Cir. 2015).  Incentive awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives.  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the reasonableness of an incentive award, courts look to the number of plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.  *Online DVD-Rental*, 779 F.3d at 947.

Here, the two named Plaintiffs, Brewster Loomer and Peter Sliman, would each receive an incentive award of up to $10,000 from the GSA in recognition of their efforts in prosecuting the case that included assisting counsel with the investigation and litigation, reviewing discovery responses, and providing input during settlement negotiations.  ECF No. 22 at 9.  The requested amount makes up roughly 0.63% of the total settlement award.  The Court preliminarily concludes the incentive reward of $10,000 is reasonable.

Regarding the amounts requested for attorneys' fees and costs, the Court preliminarily concludes that these too are reasonable and not excessive.  In scrutinizing a proposed class action settlement, the Court must ensure that fees to be paid class counsel are not unreasonably high.  *Staton*, 327 F.3d 938, 964 (9th Cir. 2003).  In common fund cases, the Court has discretion to use either the percentage-of-the-fund or the lodestar method to calculate a reasonable attorneys'

fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage award method, 20-30% is the typical range of acceptable attorney fees, with 25% considered the benchmark award. *Id.* Here, the proposed class counsel seeks 33.33% of the common fund, or GSA, as compensation for work already performed, as well as work remaining to be performed. Plaintiffs' counsel argues this amount is reasonable based on the litigation and risk involved in this case which counsel undertook on a contingency basis. ECF No. 22 at 9-10. While this percentage is above the typical range of acceptable attorney fees, it is not outside the realm of reasonable. *See, e.g.*, *A.M. v. Moda Health Plan, Inc.*, No. C14-1191 TSZ, 2015 WL 9839771, at *3 (W.D. Wash. Nov. 3, 2015) (awarding 35% of settlement amount as attorney's fees). Therefore, the Court preliminarily concludes the requested amount is reasonable. The Court also concludes the estimated reimbursement of litigation costs in the amount of $17,500 is also reasonable.

### III. Proposed Notice Program

Rule 23(c)(2) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2)(B). The best notice practicable is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

1  action and afford them an opportunity to present their objections." *Mullane v. Cent.*

2  *Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The notice must "clearly and

3  concisely state in plain, easily understood language" the following: (1) the nature

4  of the action; (2) the definition of the class certified; (3) the class claims, issues, or

5  defenses; (4) each class member's option to enter an appearance through an

6  attorney; (5) each class member's option to be excluded from the class action, upon

7  request; (6) the time and manner for requesting exclusion; and (7) the binding

8  effect of the class judgment on members.  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

9      After review of the provided proposed notice, the Court finds it complies

10  with due process and Rule 23 and therefore approves the notice as to form and

11  content.

12  **ACCORDINGLY, IT IS HEREBY ORDERED:**

13      1.  Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

14          (ECF No. 22) is **GRANTED**.

15      2.  The Court finds, for the purposes of approving this Settlement only, the

16          Proposed Class meets the requirements for certification under Fed. R.

17          Civ. P. 23(a) and at least one section of Fed. R. Civ. P. 23(b): (1) the

18          class is so numerous that joinder of all members is impracticable; (2)

19          there are questions of law and fact common to the class, (3) the claims or

20          defenses of the representative parties are typical of the claims or defenses

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT ~ 14

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  The requirements of Fed. R. Civ. P. 23(b)(3) are met when common questions of law or fact predominate and class action is a superior method of adjudication.

3. The Court preliminarily approves the Settlement Agreement and the terms set forth therein—including the relief afforded the Settlement Class, the service award to the Plaintiffs, the attorneys' fees and costs award to Class Counsel, and the Settlement Administration expenses award—as being fair, reasonable and adequate.  The Settlement Agreement is the result of arm's length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular.

4. The Court appoints Rekhi & Wolk, P.S. and Ferraro Vega Employment Lawyers as class counsel.

5. The Court appoints Plaintiffs Brewster Loomer and Peter Sliman as class representatives.

6. The Court appoints CAC Services Group, LLC as Settlement Administrator.  The Court approves the Settlement Administrator to perform the functions required by the terms of the Settlement Agreement.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 15

1      The Court also approves reasonable compensation and costs to the

2      Settlement Administrator in accordance with the Settlement Agreement.

3   7.  A final fairness hearing ("**Final Fairness Hearing**") for purposes of

4      determining whether the Settlement should be finally approved, shall be

5      held before the Court on **December 10, 2025, at 10:30 a.m. at the**

6      **United States District Court for the Eastern District of Washington,**

7      **located at 920 West Riverside Ave, Courtroom 902, Spokane,**

8      **Washington 99201**.  At the hearing, the Court will hear arguments

9      concerning whether the proposed Settlement and the terms and

10     conditions provided for in the Settlement Agreement should be granted

11     final approval by the Court as fair, reasonable and adequate.  The Court

12     will also consider Class Counsel's request for attorneys' fees and costs

13     and for a service payment to each of the Class Representatives, and rule

14     on any other matters that the Court deems appropriate.

15  8.  The Court approves, as to form and content, the Notice of Settlement to

16     be sent to the members of the Proposed Class, which is attached to the

17     Settlement Agreement as Attachment A.  In addition, the Court finds that

18     distribution of the Notices in the manner set forth in Paragraph 9 of this

19     Order and Section 6.4 of the Settlement Agreement will meet the

20     requirements of due process and applicable law, will provide the best

notice practicable under the circumstances, and will constitute due and sufficient notice to all individuals entitled thereto.

9. The procedure for distributing notice shall be as follows:

a. **Within fifteen (15) days** of the date of this Order, Defendants shall produce to the Settlement Administrator for each Proposed Class Member in MS Excel format: name, last known address, last known telephone number, social security number, and number of Class Workweeks ("Employee Data").

b. **No later than fourteen (14) days** after receiving the Employee Data, the Settlement Administrator shall issue notice to all Proposed Class Members ("Class Notice") by regular mail. The date on which Class Notices are sent shall be deemed the "Initial Mailing Date."

c. Before mailing the Class Notices, the Settlement Administrator will perform normal and customary address updates and verifications as necessary.

d. The Class Notice shall provide that Proposed Class Members may exclude themselves from the Settlement by submitting a written request which must be postmarked and received by the Settlement

Administrator within **forty-five (45) days** from the Initial Mailing Date.

 e. If a Class Notice is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend the Class Notice to that forwarding address.  If a Class Notice is returned as undeliverable and without a forwarding address, the Settlement Administrator will perform a reasonable skip trace, and if it obtains a more recent address, will resend the Class Notice.

 f. The Settlement Administrator or Class Counsel may mail or email a Notice of Settlement and/or Exclusion Letter to a Proposed Class Member at an address or email address obtained by other means if the Notice of Settlement is returned as undeliverable or upon the Proposed Class Member's request for the same.

10. **No later than sixteen (16) court days** before the Final Approval Hearing, Class Counsel shall file a motion requesting that the Court grant final approval of the Settlement Agreement and enter a Final Judgment dismissing the case with prejudice and without an award of attorney's fees, expenses or costs to any Party except as provided in the Settlement Agreement.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ~ 18

1    11. The Court reserves the right to adjourn the date of the Final Fairness

2    Hearing without further notice to the members of the Settlement Class

3    and retains jurisdiction to consider all further applications arising out of

4    or connected with the proposed Settlement Agreement.

5    The District Court Executive is directed to enter this Order and furnish

6 copies to counsel.

7    DATED September 2, 2025.



THOMAS O. RICE
United States District Judge